### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In re** | : | CHAPTER 11 |
| | : | |
| **NEW CENTURY HOLDINGS, INC.,** a Delaware | : | |
| Corporation, *et al.* | : | |
| | : | Bankruptcy No. 07-10416(KJC) |
| Debtor | : | Jointly Administered |
| | : | |
| _____ | : | |
| | : | |
| **GREGORY J. SCHROEDER, et al.** | : | |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **NEW CENTURY HOLDINGS, INC.,** a | : | |
| Delaware Corporation, *et al.*; and | : | |
| | : | |
| **WELLS FARGO BANK N.A. a/k/a WELLS** | : | |
| **FARGO ITS,** as trustee of the trust formed | : | |
| under the New Century Financial Corporation | : | |
| Supplemental Benefit and Deferred | : | |
| Compensation Trust Agreement; and | : | |
| | : | |
| **HAROLD A. BLACK, FREDERIC J.** | : | |
| **FOSTER, DONALD E. LANGE, and** | : | |
| **MICHAEL M. SACHS,** in their capacity as the | : | |
| Compensation Committee of the Board of Directors | : | |
| of New Century Financial Corporation and | : | |
| therefore the Plan Administrator, and any | : | |
| successors thereto and any Committee | : | |
| (as defined in the Plan) appointed by the Plan | : | |
| Administrator; and | : | |
| | : | |
| **THE OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS** | : | |
| | : | |
| Defendants | : | Adversary No. 07-51598 (KJC) |
| _____ | : | |

# MEMORANDUM[1]

**BY:    KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

## Background

On June 20, 2007, Plaintiffs, Gregory J. Schroeder, et al.[2] ("Plaintiffs"), commenced this

adversary proceeding by filing a complaint ("Complaint") against New Century Holdings, Inc., et

al.[3] ("Debtors") and several other defendants including Wells Fargo Bank N.A.[4] ("Wells Fargo"),

members of New Century's Board of Directors in their capacity as members of the Compensation

Committee[5] ("Compensation Committee"), and The Official Committee of Unsecured Creditors

---

[1] This Memorandum constitutes the findings of fact and conclusions of law required by Fed. R.
Bankr. P. 7052.

[2] Gregory J. Schroeder, Michelle Parker, Martin Warren, Steve Holland, Nabil Bawa, and the Ad Hoc
Committee of Beneficiaries of the New Century Financial Corporation Deferred Compensation Plan and
the New Century Financial Corporation Supplemental Executive Retirement Savings Plan for themselves
and all others similarly situated.

[3] New Century Holdings, Inc., a Delaware corporation, New Century Financial Corporation (f/k/a New
Century REIT, Inc.) a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century
Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage)
(d/b/a NCMC Mortgage Corporate, New Century Corporation, New Century Mortgage Ventures, LLC), a
California corporation; NC Capital Corporation, a California corporation; Home 123 Corporation (f/k/a the
Anyloan Corporation, 1800Anyloan.com, Anyloan.com), a California corporation; New Century Credit
Corporation (f/k/a Worth Funding Incorporated), a California Corporation; NC Asset Holdings, L.P.
(F/K/A NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a
Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a
California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III
Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending,
Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, AD Astra Mortgage,
Midwest Home Mortgage, Trats Financial Services, Elite Financial Services, Buyers Advantage Mortgage),
a Delaware limited liability company; NC Deltex, LLC, a Delaware limited liability company, NCORAL,
L.P., a Delaware limited partnership.

[4] Wells Fargo Bank N.A. a/k/a Wells Fargo ITS, as trustee of the trust formed under the New Century
Financial Corporation Supplemental Benefit and Deferred Compensation Trust Agreement.

[5] Harold A. Black, Frederic J. Foster, Donald E. Lange, and Michael M. Sachs, in their capacity as the
Compensation Committee of the Board of Directors of New Century Financial Corporation and therefore
the Plan Administrator, and any successors thereto and any Committee (as defined in the Plan) appointed
by the Plan Administrator

("Committee"). In this action, the Plaintiffs seek a declaration that the New Century Deferred Compensation Plan ("Plan") is not a "top hat" plan as defined by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and, therefore, is subject to all the substantive requirements of ERISA and 11 U.S.C. §541(b)(7). Alternatively, the Plaintiffs seek an order imposing a trust on the assets of the Plan to redress ERISA violations, or an order reforming the terms of the Plan, and/or the Trust containing the Plan's assets, to redress ERISA violations. The Plaintiffs seek attorneys fees and costs in both alternatives. In addition, the Plaintiffs seek an order certifying the Beneficiaries as a class under Rule 7023, appointing the Plaintiffs as representatives of the class and appointing as class counsel. No class has been certified.

On July 25, 2007, the Debtors filed a motion to dismiss the Complaint which the Committee joined. On August 20, 2007, the Plaintiffs filed an answering brief opposing the Debtors' motion to dismiss. Wells Fargo filed its own motion to dismiss the Complaint on August 27, 2007, making arguments similar to those made by the Debtors, which the Committee also joined. On September 6, 2007, the Debtors filed a reply brief in support of their motion to dismiss, which the Committee joined. The Plaintiffs answered the Wells Fargo motion to dismiss on September 14, 2007. Subsequently, Wells Fargo filed a reply brief on September 21, 2007, which it supplemented on September 24, 2007. The Court heard oral argument on the pending motions on October 2, 2007. After argument, the Plaintiffs supplemented their Answering Brief on November 14, 2007, to which Wells Fargo responded on December 5, 2007. For the reasons which follow, the motions to dismiss will be denied.

**Factual Allegations**

For the purposes of ruling on the pending motions, the Court takes the facts alleged in the Complaint to be true. On or about January 1, 1999, the Debtors executed and made available to eligible employees of the Debtors a deferred compensation plan which was subsequently replaced with the Plan on July 1, 2004. Complaint, ¶ 14. The Plan is an employee benefit plan as defined

3

by ERISA and is designed to "provide certain key employees" with "additional retirement benefits and increased financial security, on a tax favored basis." Complaint, ¶¶ 15-16. The Debtors intended the Plan to be a top hat plan exempted from the substantive provisions of ERISA. Complaint, ¶ 31. To satisfy ERISA requirements for top hat plans, the Plan was designed as an unfunded plan, Complaint, ¶ 16, but is not, in fact, unfunded within the meaning of ERISA, Complaint, ¶ 38.

In addition, the Debtors created a trust to "assist [the Debtors]… in meeting their respective liabilities under the [Plan]… ." Complaint, ¶ 17. Wells Fargo is the trustee of the Trust. Complaint, ¶ 6.[6]    The Plaintiffs allege that all amounts withheld from employee compensation were placed into an account in Wells Fargo's name and have remained in that account (aside from any amounts distributed as deferred compensation under the Plan). Complaint, ¶ 18. In this segregated account, the Trustee currently holds amounts withheld from wages, bonuses, and salaries of employees participating in the Plan, which is in excess of $43,000,000. Complaint, ¶ 20. The terms of the Trust state that the Debtors have "no right or power to direct the Trustee to pay [the Debtors] or to divert to others any of the Trust assets before all payments of benefits have been made to the Participants… pursuant to the terms of the Plan." Complaint, ¶ 19. This Court ordered that these amounts not be used for any purpose until further order of the Court. Complaint, ¶ 26.

The Plaintiffs allege that the Plan, while purporting to meet the ERISA requirements for a top hat plan, fails to meet one or more of those requirements. Complaint, ¶ 39. As a result, the Plan is subject to the substantive requirements of ERISA. Complaint, ¶ 39. If so, any employee contributions are "held in trust for the exclusive benefit of the Beneficiaries regardless of any language in the… [agreement creating the Trust] or the Plan to the contrary." Complaint, ¶ 40. In addition to this "exclusive benefit rule," a finding that ERISA applies will also require that the

---

[6] In its capacity as trustee, Wells Fargo also makes arguments in its motion to dismiss distinctly related to its position as trustee. However, the Court will not – at this stage – release Wells Fargo from this proceeding, and whose fate, for now, is tied to the ultimate determination of the Plan's status.

4

Plan comply with the "non-inurement rule." The non-inurement rule provides, in relevant part, that "…the assets of a plan shall never inure to the benefit of any employer…" 29 U.S.C. §1103(c)(1). The Plaintiffs argue that the Plan Assets may never become property of the Debtors' bankruptcy estate because to do so would cause the Plan Assets to inure to Debtors' benefit and, thus, violate the non-inurement rule. Complaint, ¶ 42.

The Debtors filed for protection under chapter 11 on April 2, 2007. On June 20, 2007, Plaintiffs, commenced this adversary proceeding seeking an order:

1. Certifying the Beneficiaries as a class under Rule 7023, appointing the Plaintiffs as representatives of the class and appointing… class counsel;
2. Declaring that the Plan does not meet the definition of a top hat plan under ERISA;
3. Declaring that the Plan and the Trust are subject to all of the substantive protections afforded by ERISA including, but not limited to, the "exclusive benefit rule" and the "non-inurement rule"; and that such provisions are implied into the Plan and Trust by operation of law;
4. Declaring that the Plan Assets are held in trust for the exclusive benefit of the Beneficiaries;
5. Declaring that the Plan Assets are not property of any of the Debtors' bankruptcy estates;
6. Ordering distribution of the Plan Assets to the Beneficiaries consistent with ERISA's substantive provisions;
7. Alternatively, imposing a trust or equitable lien upon the Plan Assets for the exclusive benefit of the Beneficiaries and ordering distribution consistent with such trust and/or lien;
8. Alternatively, reforming the terms of the Plan and/or the Trust to make them consistent with, and import the terms of, ERISA's substantive protections and to provide that the Plan Assets are held in trust for the exclusive benefit of the Beneficiaries and ordering distribution consistent with such trust;
9. Awarding to the Plaintiffs the amount of their attorneys fees and costs incurred in investigating and prosecuting this action; inter alia, under 29 U.S.C. §1132(g) and finding that such award constitutes an administrative expense of the Debtor's estates; and
10. Alternatively, and only if the Court finds the Plan to be a top hat plan, finding that only general creditors of New Century (and no other Debtor) share with the Beneficiaries in the Plan Assets, and defining "general creditors" to exclude all secured creditors including as to deficiency claims.[7]

Complaint, pages 15 - 17.

## Jurisdiction

---

[7] The Plaintiffs in their Complaint use the term "Debtors" to refer to the various New Century Holdings, Inc. entities named as defendants in the Complaint. However, in this request for relief, the Plaintiffs refer merely to New Century. The Court assumes that this is an oversight by the Plaintiffs and that they, in fact, intended to refer to all of the various New Century Holdings, Inc. entities named as defendants in the Complaint.

Bankruptcy Court jurisdiction is codified in 28 U.S.C. §1334 and 28 U.S.C. §157. Section 157 divides Bankruptcy Court jurisdiction into "core" and "non-core" proceedings. In core proceedings, the Bankruptcy Court assumes the role of a court of first instance with comprehensive power to hear, decide and enter final orders and judgments, and if a matter is non-core, the Bankruptcy Court is permitted only to hear the dispute and submit "proposed findings of facts and conclusions of law to the district court." Halper v. Halper, 164 F.3d 830, 836 (3rd Cir. 1999). The Bankruptcy Court must determine, on its own motion or on the "timely motion of a party," whether a proceeding comes within the court's core or non-core jurisdiction. 28 U.S.C. §157(c)(1). "...[A]bsent the parties' allegations, the bankruptcy court is required in all cases to make a *sua sponte* determination as to whether or not a proceeding is core...." In re Sheridan, 362 F.3d 96, 102 (1st Cir. 2004).

The first source of guidance whether a proceeding is core or non-core is §157 itself, which provides an illustrative list of proceedings that may be considered core. *See* Halper, 164 F.3d at 836. This adversary proceeding arguably falls within the broad language of §§157(b)(2)(A) or, (O). [8] However, Bankruptcy Courts should exercise caution when relying on either of these sections alone. The language of §§157(b)(2)(A) and (O) is very inclusive and the jurisdiction of Bankruptcy Courts must remain within the bounds of the Marathon decision. Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.), 273 B.R. 374, 393

---

[8] 28 U.S.C. §157(b)(2) provides in relevant part:

Core proceedings include, but are not limited to--

(A) matters concerning the administration of the estate;

. . . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

. . . .

(Bankr.E.D.Pa. 2002)(discussing <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458

U.S. 50, 102 Sp.Ct. 2858, 73 L.Ed.2d 598(1982).

    While §157(b) provides an illustrative list of proceedings that are considered core,

Bankruptcy Court jurisdiction extends fundamentally to four types of title 11 matters: "(1) cases

under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title

11, and (4) proceedings related to a case under title 11." <u>In re Combustion Eng'g, Inc.</u>, 391 F.3d

190, 225-226 (3rd Cir. 2004). "Cases under title 11, proceedings arising under title 11, and

proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas

proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings."[9] <u>Id</u>.

    Cases "under title 11" merely refer to the bankruptcy petition itself. <u>Stoe v. Flaherty</u>,

436 F.3d 209, 216 (3rd Cir. 2006). Jurisdiction "under title 11" provides no jurisdiction for

"actions going beyond the bankruptcy petition." <u>In re Kovalchick</u>, 371 B.R. 54 (Bankr.M.D.Pa.

2006).

    Beyond the scope of "under title 11" jurisdiction, is "arising under title 11." "Bankruptcy

'arising under' jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original

jurisdiction in district courts 'of all civil actions arising under the Constitution, laws, or treaties of

the United States.'" <u>Stoe</u>, 436 F.3d at 216. Thus, "'[a]rising under title 11' includes causes of

action expressly authorized by the Bankruptcy Code, e.g., proceedings to recover a fraudulent

transfer or an unauthorized post-petition transfer, or an action to avoid a preference." <u>In re</u>

<u>Family Theatre, LLC</u>  2006 WL 3327317, *3 (Bankr.D.N.J. 2006).

    Alternatively, "arising in" jurisdiction provides jurisdiction for proceedings which "have

no existence outside of the bankruptcy." <u>Stoe</u>, 436 F.3d at 216 (*quoting* <u>United States Trustee v.</u>

<u>Gryphon at the Stone Mansion, Inc.</u>, 166 F.3d 552, 556 (3rd Cir.1999)). "Arising in" proceedings

---

[9] If a matter before a Bankruptcy Court fails to meet any of the four categories, the proceeding is
considered "not related to." In that situation the proceeding is neither core nor non-core, and the
Bankruptcy Court has no jurisdiction over the matter. <u>Matter of Celotex Corp.</u>, 152 B.R. 667,
671 (Bankr.M.D.Fla. 1993).

are not based on a right created by the Bankruptcy Code; they are proceedings that can exist only in the context of bankruptcy.  This category is illustrated by such things as "allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, orders permitting the assumption or rejection of contracts... ."  Kovalchick, 371 B.R. at 60.

Beyond the scope of both "arising under" and "arising in" jurisdiction, exists "related to" jurisdiction.  "[A] proceeding is 'related to' a bankruptcy case if 'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  Stoe, 436 F.3d at 216 (3rd Cir. 2006).  As discussed above, a "related to" proceeding provides the Bankruptcy Court with non-core jurisdiction.

Section 541(a) of the Bankruptcy Code defines "property of the estate" and provides that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Various courts have concluded that matters requiring a declaration of whether certain property comes within § 541's definition of "property of the estate" are core proceedings. *See* Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines), 138 B.R. 442, 445 (D.Del.1992) (A determination regarding property of the estate is a core proceeding); All American Laundry Service v. Ascher (In re Ascher), 128 B.R. 639, 643 (Bankr.N.D.Ill.1991) (When a debtor and its creditors claim interests in property asserted to be part of the estate, the bankruptcy court has core jurisdiction to adjudicate all of those interests); Knopfler v. Schraiber (In re Schraiber), 97 B.R. 937, 939-40 (Bankr.N.D.Ill.1989) (Bankruptcy court has core jurisdiction to determine what is estate property and can apply state law or any other relevant authority in making such a determination). "[A] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction." Ascher, 128 B.R. at 643.  See also Reliance Group Holdings, 273 B.R. at 394-395 (same).

Additionally, case law supports the view that actions regarding a constructive trust, such as the one requested by the Plaintiffs, are core proceedings. The Fourth Circuit Court of Appeals said:

> Clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court, and such proceedings must be considered core proceedings....The finding of a constructive trust by the bankruptcy court and a determination of the proper distribution of that trust are intimately tied to the traditional bankruptcy functions and estate, and, therefore, are core matters within the clear jurisdiction of the bankruptcy court.

In re Johnson, 960 F.2d 396, 402 (4th Cir.1992).

Plaintiffs ask this Court to declare that the Plan fails to meet the requirements for a top hat plan. Complaint, ¶ 28 – 42. Such a declaration, the Plaintiffs allege, will determine the Debtors' rights to the Plan Assets. Complaint, ¶ 30. An action for declaratory relief regarding the debtor's rights to assets is a core proceeding. Celotex, 152 B.R. at 676.

Finally, there is historical support for the proposition that the determination of ownership of property in the possession of a debtor is core in nature. Under the former Bankruptcy Act, bankruptcy courts were given summary jurisdiction over all property in the actual or constructive possession of the debtor as of the date of filing the bankruptcy petition. In re PSINet, 271 B.R. 1, 32 (Bankr.S.D.N.Y. 2001) (citing In re Land Investors, Inc., 544 F.2d 925, 929 (7th Cir. 1976)). This jurisdiction was not viewed as constitutionally infirm under the former Bankruptcy Act and the present Bankruptcy Code effected no change in this respect from the prior law. Therefore, the exercise of such jurisdiction does not run afoul of Marathon. PSINet, 271 B.R. at 31-35.

Plaintiffs argue the Plan Assets are excluded from the Debtors' bankruptcy estate under either ERISA or 11 U.S.C. §541(b)(7). Therefore, this adversary proceeding requires a determination of whether the Plan Assets are property of the Debtors' bankruptcy estate, and proceedings which require such a determination "arise under" title 11. Accordingly, this adversary proceeding is a core proceeding.

## Standard – Motion to Dismiss

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b) governs a motion to

dismiss for failing to state a claim upon which relief can be granted. "The purpose of a motion to

dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits

of the case." Paul v. Intel Corp. (In re Intel Corp. Microprocessor Anti-Trust Litig.), 496 F.Supp.

2d 404, 407 (D.Del. 2007) citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). The

complaint "must contain either direct or inferential allegations respecting all the material

elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v.

Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007) quoting Car Carriers,

Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)(emphasis in original).

In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as

true all factual allegations in the complaint and draw all inferences from the facts alleged in the

light most favorable to the plaintiff. Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir.

2003). Fed.R.Civ.P. 8(a)(2), made applicable by Fed.R.Bankr.P. 7008, requires the complaint to

contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in

order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests." Twombly, 127 S.Ct. at 1964 quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957). A complaint need not contain detailed factual allegations, but "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .

Factual allegations must be enough to raise a right to relief above the speculative level."

Twombly, 127 S.Ct. at 1964-65.

The relevant record under consideration consists of the complaint and any "document

integral or explicitly relied on in the complaint." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d

383, 388 (3d Cir. 2002), citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d

Cir. 1997). The movant carries the burden of demonstrating that dismissal is appropriate. Intel

Corp., 496 F.Supp.2d at 408.

**Discussion**

**Do the Plaintiffs Seek Appropriate Equitable Relief?**

Count I of the Complaint seeks a declaration that the Plan is not a top hat plan.

Complaint, ¶¶ 28 – 42. The Debtors argue, however, that such relief is unavailable to the

Plaintiffs because it is not "appropriate equitable relief under ERISA." Section 1132 of ERISA

provides, in pertinent part:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
>> (1) by a participant or beneficiary--
>>
>>> (A) for the relief provided for in subsection (c) of this section, or
>>>
>>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>>
>> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
>>
>> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. §1132(a)(1)-(3). The Debtors argue that declaratory relief, or any other equitable relief

under §1132(a)(3)(B), is only appropriate when a plaintiff has no other claim under ERISA.

Opening Brief in Support of the New Century Defendants' Motion to Dismiss, page 23. The

Debtors assert that the Plaintiffs' claims fundamentally are for a "...recovery of benefits through

a distribution of the assets in the Trust free from the reach of New Century's creditors." As such,

the Plaintiffs' request for relief is appropriately brought as a §1132(a)(1)(B) action "to recover

benefits due him under the terms of his plan... ." The Debtors argue that because the Plaintiffs'

claims fall under §1132(a)(1)(B), the Plaintiffs must forego the equitable relief available under

§1132(a)(3)(B).

The terms of the Plan provide:

> Unfunded Status of Plan. The Plan is intended to constitute an "unfunded" plan of deferred compensation for Participants. Benefits payable hereunder shall be payable out of the general assets of the Company, and no segregation of any assets whatsoever for such benefits shall be made. Notwithstanding any segregation of assets or transfer to a grantor trust, with respect to any payments not yet made to a Participant, nothing contained herein shall give any such Participant any rights to assets that are greater than those of a general creditor of the Company.

Complaint, Exhibit B, page 23. The Court will apply the reasoning of the court in Carrabba v.

Randalls Food Markets, Inc., and concludes that the Plaintiffs here bring an appropriate request

for equitable relief under §1132(a)(3)(B). Carrabba v. Randalls Food Markets, Inc., 145

F.Supp.2d 763 (N.D.Tex. 2000), *aff'd*, 252 F.3d. 721 (5th Cir. 2001), *cert. denied* 534 U.S. 995,

151 (2001). In Carrabba, the plaintiffs were participants in an employee benefits plan that the

employer asserted to be top hat plan. In an earlier decision related to Carrabba, the court found

that the plan was not a top hat plan because the plan was not maintained as a top hat plan as

defined by 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1). Carrabba v. Randalls Food

Markets, Inc. 38 F.Supp.2d. 468 (N.D.Tex. 1999). Upon that decision, the plaintiffs asserted that

they were entitled to recover under §1132(a)(1)(B); however, the court stated that:

> If recovery under the terms of the [deferred compensation plan] were the nature of plaintiffs' action, they would recover very little because there is no evidence that upon termination of the [deferred compensation plan] they did not receive basically everything to which they were entitled under the provisions of the [deferred compensation plan]. The remedy of the Class lies instead in the grant of appropriate equitable relief, as contemplated by 29 U.S.C. § 1132(a)(3)(B), to address violations of, and to give effect to, the accrual and vesting provisions of ERISA.

Carrabba , 145 F.Supp.2d at 770. Similarly, here, the Court concludes that the Plaintiff may bring

a request for declaratory judgment under §1132(a)(3)(B). Accordingly, the motions to dismiss as

they relate to this argument are denied.

Additionally, the Committee argues that the Court should dismiss all Counts of the

Complaint because they are essentially a claim for breach of contract. The Court is unable to

agree that the Plaintiffs' claim can be construed as a breach of contract. Moreover, the Plaintiffs

cannot bring a breach of contract claim, because ERISA's civil enforcement provisions preempt

all analogous state law claims.  *See* Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 217 (2d Cir. 2006);  Holloman v. Mail-Well Corp., 443 F.3d 832, 835 -836 (11th Cir. 2006).  Plaintiffs' appropriately bring their claims under ERISA's civil enforcement provisions.

### Are the Plaintiffs' Claims Time Barred?

Both the Debtors and Wells Fargo argue that the Plaintiffs claims are foreclosed by the applicable statute of limitations.  Opening Brief in Support of the New Century Defendants' Motion to Dismiss, page 26 – 29;  Opening Brief in Support of Defendant Wells Fargo Bank N.A.'s Motion to Dismiss, page 33 – 34.  Both parties assert that the Plaintiffs' claim is really a §1132(a)(1)(B) claim for which ERISA does not provide a statute of limitations.  In a case in which the federal law does not provide a statute of limitations federal courts are to apply the most analogous state law statute of limitations.  Miller v. Fortis Benefit Ins. Co., 475 F.3d 516, 520 n.2 (3d Cir. 2007).  The Debtors and Wells Fargo argue that the most analogous state statute of limitations is Delaware Code §8111, which provides a one-year statute of limitations.  10 Del. C. § 8111.  After the applicable limitations period is determined, courts look to federal law to determine when a cause of action accrues.  Miller, 475 F.3d at 520.  The Third Circuit has adopted the discovery rule to determine when a cause of action accrues in the case where the applicable federal law does not provide the limitations period.  In the ERISA context, courts have modified the discovery rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied or when the plaintiff is clearly alerted that his or her entitlement to benefits has been repudiated.  Id. at 520 – 21.

However, the Court has determined that the Plaintiffs' claim is appropriately brought under §1132(a)(3)(B).  Therefore, ERISA provides the applicable statute of limitations period in §1113.  Section §1113 provides that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, *or with respect to a violation of this part*, after the earlier of--

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. §1113 (emphasis added).[10]  Plaintiffs allege that the Plan does not qualify as a top hat plan and therefore is in violation of many ERISA provisions including exclusive benefit rule and the non-inurement rule. Complaint, ¶ 39. Therefore, the three-year limitations period is the shortest period possibly applicable to the Plaintiffs' claim in Count I. As applied here, the Plaintiffs' claim began to accrue after the earliest date on which the Plaintiff had actual knowledge of ERISA violations, so the Plaintiffs' claim is time barred only if the Plaintiffs' had actual knowledge of ERISA violations before June 20, 2004. The Court will reserve its decision as to whether the Plaintiffs' claims are time barred until the facts are more fully developed. Accordingly, motions to dismiss based on an argument that the Plaintiffs' claims are time barred will be denied.

**Top Hat Status**

According to basic tax rules, when an employer exchanges assets with an employee in return for that employee's services, the assets received by that employee are taxed as income to the employee. See, 26 U.S.C. § 83(a)(2004). However, a simultaneous exchange of services for assets is not required for the assets to be taxed as income to the employee. When assets are made available to an employee without substantial restrictions on the employee's control over the

---

[10] ERISA defines "fiduciary" to include: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Under this broad definition, both the Debtors and Wells Fargo may be considered fiduciaries if the Court determines the Plan is not a top hat plan.

14

assets, the employee is in constructive receipt of the assets and must include their value in gross income. Leavens v. C. I. R., 467 F.2d 809, 813 (3d Cir. 1972). "So long as the "income . . . is subject to a man's unfettered command and . . . he is free to enjoy [it] at his own option [, it] may be taxed to him as income, whether he sees fit to enjoy it or not." Id. (*quoting* Corliss v. Bowers, 281 U.S. 376, 378 (1930)).

In an effort to reduce income tax, deferred compensation plans were developed. Deferred compensation plans are agreements between an employer and an employee in which the employer agrees to pay part of the employee's compensation at a future date and the employee pays no income tax on the deferred income until that future date. David J. Cartano, *Taxation of Compensation & Benefits* § 20.01[A], at 745 (2007). The employee receives this favorable tax benefit if 1) the plan complies with IRC Section 409A; and 2) the plan is unfunded. Id. at § 20.02[A], at 747. A plan is unfunded when:

> [t]he employer promises to pay the employee the deferred compensation at a specified time, but does not set aside the funds in an escrow, trust fund, or otherwise. The assets used to pay the deferred compensation are the general assets of the employer and are subject to the claims of the employer's creditors.

Id. at § 20.02[A], at 721. One type of deferred compensation plan is known as a top hat plan.

Top hat plans, and all other employee benefit plans, are governed by the ERISA. In re New Valley Corp., 89 F.3d 143, 148 (3d Cir. 1996). However, while top hat plans are governed by ERISA, they are exempted from many of its substantive requirements.[11] ERISA defines a top hat plan as, "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly

---

[11] "Section 201(2) of ERISA exempts top hat plans from ERISA's minimum participation standards, minimum vesting standards, and [requirements relating to: benefit accrual, joint and survivor annuity and preretirement survivor annuity, form and payment of benefits, mergers and consolidations of plans or transfers of plan assets, recordkeeping and reporting, multiple employer plans, and effective dates]. Section 301(a)(3) of ERISA exempts top hat plans from ERISA's minimum funding requirements. Section 401(a)(1) of ERISA exempts top hat plans from ERISA's fiduciary responsibility provisions, including the requirement of a written plan, the need to give control of plan funds to a trustee, the imposition of liability on fiduciaries, and limitations on transactions and investments. Top hat plans are subject to the reporting and disclosure requirements of ERISA..." Bruce McNeil, *Nonqualified Deferred Compensation Plans* §1:22. (2007).

compensated employees." 29 U.S.C. §1051(2).  The Third Circuit Court of Appeals has adopted

a two-prong test to determine whether a deferred compensation plan meets the ERISA definition

of a top hat plan and is, therefore, exempted from ERISA's requirements relating to vesting,

participation, fiduciary responsibilities and funding.[12]  Accardi v. IT Litigation Trust (In re IT

Group, Inc.), 448 F.3d 661, 667 (3d Cir. 2006).  The first prong requires that the plan be

"unfunded and exhibit the required purpose." New Valley Corp., 89 F.3d at 148.  The second

prong requires that the plan cover a select group of management or highly compensated

employees.  IT Group, Inc., 448 F.3d at 407.

       The burden of establishing the existence of a top hat rests on the party asserting that it is a

top hat plan.  IT Group, Inc., 305 B.R. 402, 407 (Bankr.D.Del. 2004) (quoting Carrabba, 38

F.Supp.2d at 477).  The Plaintiffs allege that the Plan is not a top hat plan under ERISA because

the Plan fails to meet either prong of the test.  Complaint, ¶¶ 35, 36, and 38.

**A. Is the Plan "Unfunded?"**

       The Plan meets the requirements for an unfunded plan.  ERISA does not specify what is

required for a plan to qualify as unfunded.  However, the Third Circuit said that "...the keys to

the determination of whether a plan is "funded" or "unfunded" under ERISA are (1) whether

beneficiaries of the plan can look to a res separate from the general assets of the corporation to

satisfy their claims; (2) whether beneficiaries of the plan have a legal right greater than that of

general, unsecured creditors to the assets of the corporation or to some specific subset of

corporate assets." IT Group, Inc., 448 F.3d at 669.

       **i. Plan Language**

       At the outset, the Plan states "This Plan shall be unfunded for tax purposes and for

purposes of Title I of ERISA." Complaint, Exhibit B, at 2.  While a mere statement that a plan is

unfunded does not make it so, an analysis of the Plan documents reveals that the Plan is

---

[12] The Plaintiffs argue that a three-prong test applied in other jurisdictions is the appropriate test; however, I
will follow, as I am bound to do, Third Circuit precedent.

unfunded.[13]  First, the Plan provides that the participants in the Plan do not have a res, separate from the general assets of the Debtors, to satisfy their claims. "Benefits payable hereunder shall be payable out of the general assets of [the Debtors], and no segregation of any assets whatsoever for such benefits shall be made." Complaint, Exhibit B, at 23. Second, the Plan provides that the participants do not have a legal right greater than that of general, unsecured creditors to the assets of the corporation or to some specific subset of corporate assets. "Notwithstanding any segregation of assets or transfer to grantor trust, with respect to any payments not yet made to a Participant, nothing contained herein shall give any such Participant any rights to assets that are greater than those of a general creditor of the [Debtors]." Complaint, Exhibit B, at 23. In addition to the Plan, the Debtors created the Trust to support the Plan:

> 14.1 Establishment of Trust. The [Debtors] shall establish the Trust, and the Employers shall transfer over to the Trust such assets, if any, as the Committee determines, from time to time and in its sole discretion, are appropriate.[14]

> 14.2 Interrelationship of the Plan and the Trust. The provisions of the Plan shall govern the rights of a Participant to receive distributions pursuant to the Plan. The provisions of the Trust shall govern the rights of the Participant and the creditors of the Employers to the assets transferred to the Trust. The Employers shall at all times remain liable to carry out their obligations under the Plan. The Employers' obligations under the Plan may be satisfied with Trust assets distributed pursuant to the terms of the Trust. Any such distribution shall reduce the Employer's obligation under this Agreement.

Complaint, Exhibit B, at 21. This Trust is a "rabbi trust." A rabbi trust is an irrevocable trust in which a trustee holds the deferred compensation funds out of the employer's reach, but still within the reach of the employer's creditors in the event of insolvency or bankruptcy. *Cartano*, at § 20.02[A], at 735. Therefore, a rabbi trust used in combination with an unfunded deferred compensation plan provides the employee with an additional measure of security without jeopardizing the plan's unfunded status. Id. at § 20.05[D], at 731. Accordingly, the Plan remains unfunded despite the use of a rabbi trust.

---

[13] The Plaintiffs alleged in the Complaint (¶ 38) that the Plan fails to meet the requirements for an unfunded plan, but essentially conceded at argument that the Plan is unfunded. (Sept. 21, 2008 Tr. at p. 99).

[14] The Plan defines the term "Committee" as "…the persons appointed by the [Compensation Committee], and which also may act for the Company or the Board in making decisions and performing specified duties under the Plan."

**B. Does the Plan Cover Only a Select Group of Management or Highly Compensated Employees?**

The second prong requires that a top hat plan must cover only a select group of management or highly compensated employees. 29 U.S.C. §1051(2); New Valley Corp., 89 F.3d at 148. The analysis of this prong requires the court to perform both a quantitative and qualitative analysis. Id. Quantitatively, "the plan must cover relatively few employees." Id. Qualitatively, "...plan participants must all be 'high level' employees, either 'management' or 'highly compensated.'" IT Group, Inc., 305 B.R. at 410 (quoting New Valley Corp., 89 F.3d at 148). Both the qualitative and quantitative elements must be met for a court to find that a plan qualifies as a top hat plan. New Valley Corp., 89 F.3d at 148. The Plaintiffs argue that the Plan fails to meet both elements of the second prong. Id.

**i. Quantitative Analysis**

The plaintiff's allege that "...more than 16% of New Century's total workforce was eligible to participate in the Plan in 2006 and more than 17% were eligible to participate in the Plan in 2007." Complaint, ¶ 35. No court has established a bright-line test to determine at what point a "select group" becomes too large to allow the plan to qualify as a top hat plan. Demery v. Extebank Deferred Compensation Plan (B), 215 F.3d 283 (2d Cir. 2000). However, the Debtors argue that even if the Plan is as large as the Plaintiffs allege, it is still within the realm of plans found to be top hat plans. The Debtors point to one case in particular in which a court found a plan, which allowed 15.34% of the workforce to participate, to be a top hat plan. Id. The Debtors argue that given the small percentage difference between the Plan and the plan found to be a top hat plan in Demery, the Court should find that the Plan meets the quantitative requirement. Again, while there is no bright-line test, the Debtors cites no case in which more than 15.34% of a employer's workforce constituted a "select group."

Courts rarely resolve the "select group" issue on a motion to dismiss under Rule 12(b)(6). Demery, 216 F.3d at 286 (affirmed the district court's decision to decide the "select group" issue

on a motion for summary judgment); Carrabba, 38 F.Supp.2d 468 (decided the "select group" issue after conducting a non-jury trial); Starr v. JCI Data Processing, Inc., 757 F.Supp. 390 (D.N.J. 1991) (decided the "select group" issue on the defendants' motion and plaintiff's cross-motion for summary judgment); Darden v. Nationwide Mut. Ins. Co., 717 F.Supp. 388 (E.D.N.C. 1989) (decided the "select group" issue after a bench trial); Belka v. Rowe Furniture Corp., 571 F.Supp. 1249 (D.Md.1983) (decided "select group" issue on employer's motion for summary judgment). The Court does recognize that one of its colleagues decided the "select group" issue on a Rule12(b)(6) motion. IT Group, Inc., 305 B.R. at 410. However, there the employee-plaintiffs, despite having been given the opportunity to amend their complaint, asserted no facts to support their position that the Deferred Compensation Plan covered more than a "select group" of employees. Id. Given the nearness of the size of the alleged "select group" here to that considered in Demery, I will leave the parties to their proofs.

### ii. Qualitative Analysis

The qualitative aspect of the second prong requires that "...plan participants must all be 'high level' employees, either 'management' or 'highly compensated.'" IT Group, Inc., 305 B.R. at 410 (*quoting* New Valley Corp., 89 F.3d at 148). A plan satisfies this requirement if each participant in the plan can meet either the "highly compensated" element or the "management" element. Id. at 411. Courts which have examined the qualitative analysis have focused their inquiry on the salaries of employees participating in the plan compared with salaries of all employees, and the job titles and/or job functions of the participating employees. Bakri v. Venture Mfg. Co., 473 F.3d 677, 678 (6th Cir. 2007)(In determining whether a plan qualifies as a top hat plan, we consider the nature of their employment duties and the compensation disparity between top hat plan members and non-members.); *see also* Demery, 216 F.3d at 289; Guiragoss v. Khoury 444 F.Supp.2d 649, 661-62 (E.D.Va. 2006); Starr, 757 F.Supp. at 394; Darden, 717 F.Supp. at 395-97; Belka, 571 F.Supp. at 1252-53.

Plaintiffs argue the Plan meets neither the "highly compensated" nor the "management" element. Complaint ¶. 36. With respect to the "highly compensated" element, the Complaint states that "[e]mployees earning wages of a minimum of $125,000 *including* base salary, commissions and bonus income were eligible to join the Plan. Upon information and belief, employees earning much less than $125,000 and who were not highly compensated under any definition were also allowed to participate in the Plan." Complaint, ¶ 21, (Plaintiffs' emphasis). The Plaintiffs do not dispute that a $125,000 salary qualifies a participant as "highly compensated," rather the Plaintiffs allege employees with salaries below $125,000 were eligible for the plan based solely on their projected commission income which was not later earned. Answering Brief in Opposition to Motions to Dismiss Filed by the Debtors and The Official Committee of Unsecured Creditors, page 34.

ERISA does not provide guidance on how to construe the term "highly compensated." However, the I.R.C. defines "highly compensated" and the Supreme Court has applied this definition to the same clause we are concerned with here. *See* 26 U.S.C. § 414(q) and Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon 541 U.S. 1, 13-14 (2004). The definition of "highly compensated" defines "compensation" as the "compensation of the participant from the employer for the year." *See* 26 U.S.C. §§ 414(q) and 415(c)(3). Section 415(c)(3) does not explicitly exclude commissions from the definition of compensation. Such an interpretation is also consistent with the basic I.R.C. definition of income: "…gross income means all income from whatever source derived, including (but not limited to) the following items: (1) Compensation for services, including fees, *commissions*, fringe benefits, and similar items…" 26 U.S.C. § 83(a) (emphasis added). Additionally, courts outside this circuit which addressed the issue included commissions when evaluating whether employees were "highly compensated." Duggan v. Hobbs, 1995 WL 150535, *1 (N.D. Cal. 1995) *aff'd* 99 F.3d 307 (9th Cir. 1996) (employee considered "highly compensated" whose earnings were comprised of his sales and residuals); Darden, 717 F.Supp. at 397 (while not ultimately considered "highly compensated,"

court considered the compensation of plan participants composed solely of commissions and benefits); Plazzo v. Nationwide Mut. Ins. Co., 697 F.Supp. 1437, 1451 (N.D. Ohio 1988) (commissions were included in the court's analysis of "highly compensated"); Fraver v. North Carolina Farm Bureau Mut. Ins. Co., 643 F.Supp. 633, 641 (E.D.N.C. 1985) (commissions were not excluded from the court's "highly compensated" analysis). Accordingly, the Court will consider the compensation actually earned by participants, including earned commissions, when it determines whether the Plan meets the "highly compensated" element. As to whether the participants in the Plan ultimately qualify as "highly compensated," I will leave the parties to their proofs.

Plaintiffs further allege most participants in the plan were not management type employees and thus the Plan also fails to meet the "management" element of the second prong. Complaint, ¶ 36. Courts which have examined this element focused their analysis on the job functions and/or job titles of plan participants. Viewing the allegations in the light most favorable to the Plaintiffs, the Complaint is sufficient with respect to the qualitative analysis.[15]

Accordingly, the motions to dismiss based on an argument that the Plan is a top hat plan will be denied.

**Counts II and III**

Top hat plans are exempted from the substantive requirements of ERISA, including the exclusive benefit rule and the non-inurement rule. 29 U.S.C. §§ 1101(a)(1) and 1103(c)(1). The Plaintiffs argue that Plan violates ERISA since it is being operated as a top hat plan despite not qualifying as such. Complaint, ¶ 43 – 52. In Count II, the Plaintiffs ask the Court to impose a

---

[15] The burden of establishing the existence of a top hat rests on the party asserting that it is a top hat plan. IT Group, Inc., 305 B.R. at 407 (quoting Carrabba, 38 F.Supp. 2d at 477). Due to the impact that determination of ownership of the disputed fund may have on confirmation of a plan and/or recoveries by creditors, it is understandable that the Debtors, the Committee and Wells Fargo moved to dismiss the Complaint in the hope of obtaining resolution of these issues prior to confirmation, now scheduled for hearing on April 24, 2008. The Court recognizes that this may leave, unavoidably, for decision in connection with confirmation of a plan, one or more of the issues raised in this adversary proceeding.

trust over the Plan Assets in the Trust to redress any violations of ERISA. <u>Complaint, ¶ 43 – 47</u>.
In Count III, the Plaintiffs request this Court to reform the Plan and Trust to redress any
violations of ERISA. <u>Complaint, ¶ 48 – 52</u>. As a matter of judicial economy, the relief requested
in Counts II and III should await determination of whether the Plan qualifies as a top hat plan,
since the relief sought is premised on a finding that the Plan is not a top hat plan. The requests to
dismiss Counts II and III will, therefore, be denied without prejudice.

**Count IV**

"ERISA's coverage extends broadly to include all employee benefit plans." <u>New Valley</u>
<u>Corp.</u>, 89 F.3d at 148. Accordingly, the Plan, whether it is ultimately determined to be a top hat
plan, is an employee benefit plan covered by ERISA. Bankruptcy Code Section
541(b)(7)(A)(i)(I) excludes from property of the estate "…any amount withheld by an employer
from the wages of employees for payment as contributions to an employee benefit plan that is
subject to title I of the Employee Retirement Income Security Act of 1974…" 11 U.S.C.
§541(b)(7)(A)(i)(I). Additionally, §541(b)(7)(B)(i)(I) excludes from property of the estate
"…any amount received by an employer from the wages of employees for payment as
contributions to an employee benefit plan that is subject to title I of the Employee Retirement
Income Security Act of 1974…" 11 U.S.C. §541(b)(7)(A)(i)(I). The Plaintiffs argue that one or
both of these provisions apply to the Plan and, accordingly, the Plan Assets are excluded from the
Debtors' bankruptcy estate. <u>Complaint, ¶ 53 – 57</u>. However, this argument assumes that Plan
Assets are appropriately characterized as an "amount withheld by an employer from the wages of
employees" or "received by an employer from employees" for contributions to an employee
benefit plan. The Plaintiffs' in their Complaint allege that amounts were "withheld" from the
"wages, bonuses, and salaries of Beneficiaries… ." <u>Complaint, ¶ 20</u>.     However, the Plan states
that participants agreed to defer compensation which, under the terms of the plan, meant,
"…compensation as to which a Participant has made an annual irrevocable election to defer
receipt until the date specified…." <u>Complaint, Exhibit B, page 4</u>. An annual deferral of income

strikes this Court as potentially very different from a "withholding" or an "amount received by an employer from employees." The latter two categories imply that the employee possessed the income at some point, whereas a deferral of income implies that the employee agreed to receive the income at a later date and never actually possessed it. It is premature, on motions to dismiss, to hold that either §541(b)(7)(A)(i)(I) or §541(b)(7)(B)(i)(I) applies to the Plan Assets and that the Plan Assets are excluded from the Debtors' bankruptcy estate.

**Counts V and VI**

A decision on Counts V and VI must also await a determination on the top hat status of the Plan. Count V seeks the Court to award attorneys' fees in the event that this Court finds the Plan violates ERISA. Complaint, ¶¶ 58 – 62. Count VI covers the situation in which the Court finds that Plan is a top hat plan. Complaint, ¶¶ 63 – 66 Both require the Court to decide the top hat status of the Plan. Therefore, motions to dismiss Counts V and VI will be denied, without prejudice.

An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: April 23, 2008