IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEW CENTURY HOLDINGS, INC., a<br>Delaware corporation, et al.,<br><br>                Debtors. | Chapter 11<br><br>Case No. 07-10416 (KJC)<br>Jointly Administered |
| GREGORY J. SCHROEDER, et al.,<br><br>                Plaintiffs<br><br>v.<br><br>NEW CENTURY HOLDINGS, INC., et<br>al.,<br><br>                Defendants. | Adv. Pro. No. 07-51598 |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE LIQUIDATING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE STATUS OF ASSETS HELD IN THE RABBI TRUST

Bonnie Glantz Fatell (No. 3809)
Elizabeth A. Sloan (No. 5045)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, Delaware 19801
(302) 425-6400
(302) 425-6464 (fax)

Gary S. Tell
Arthur W.S. Duff
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC  20006
(202) 383-5300
(202) 383-5414 (fax)

Paul A. Friedman
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-0208

*Attorneys for New Century Liquidating Trustee*

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................... 1

NATURE AND STAGE OF PROCEEDINGS ................................. 5

SUMMARY OF ARGUMENT ............................................. 7

STATEMENT OF UNDISPUTED FACTS ................................... 8

STANDARD OF REVIEW ............................................. 12

ARGUMENT ...................................................... 13

I.    THE LIQUIDATING TRUSTEE IS ENTITLED TO SUMMARY
      JUDGMENT ON COUNTS I AND IV BECAUSE THE TRUST ASSETS
      ARE ASSETS OF NEW CENTURY SUBJECT TO THE CLAIMS OF THE
      COMPANY'S GENERAL CREDITORS. ............................ 13

      A.    The Trust Agreement Makes Clear That The Assets
            Of The Trust Are At All Times Subject To The
            Claims Of New Century's General Creditors ........... 13

      B.    The Court's Determination That The Plans Are
            Unfunded Logically Supports The Conclusion That
            The Trust Assets Are Property of The Estate ........ 15

      C.    The Trust Assets Do Not Include Employee
            Contributions Or Withholdings ...................... 16

II.   THE LIQUIDATING TRUSTEE IS ENTITLED TO SUMMARY
      JUDGMENT ON COUNT II BECAUSE NEW CENTURY'S OWNERSHIP
      OF THE TRUST ASSETS BARS THE CREATION OF A
      CONSTRUCTIVE TRUST ...................................... 18

III.  THE LIQUIDATING TRUSTEE IS ENTITLED TO JUDGMENT ON
      COUNT III BECAUSE PLAINTIFFS ARE NOT ENTITLED TO
      REFORMATION OF THE TRUST ............................... 21

RELIEF REQUESTED .............................................. 23

130566.01600/40179964v.1

## TABLE OF AUTHORITIES

Page

**Cases**

*Accardi v. IT Litig. Trust,*
  448 F.3d 661 (3d Cir. 2006) ................................. 13

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242  (1986) ....................................... 12

*Bank of Alex Brown v. Goldberg,*
  158 Bankr. 188 (Bankr. E.D. Cal. 1993) ..................... 18

*BankAmerica Pension Plan v. McMath,*
  No. C 97-3242, 2001 U.S. Dist. LEXIS 2805 (N.D. Cal. Mar. 5,
  2001) ...................................................... 18

*Central Mfrs. Mut. Ins. Co. v. Jim Dandy Markets, Inc.,*
  77 F. Supp. 171 (S.D. Cal. 1948) ........................... 21

*Danning v. Bozek,*
  836 F.2d 1214 (9th Cir. 1988) .............................. 18

*Fagan v. City of Vineland,*
  22 F.3d 1283 (3d Cir. 1994) ................................ 16

*FMC Med. Plan v. Owens,*
  122 F.3d 1258 (9th Cir. 1997) .............................. 18

*GHK Assocs. v. Mayer Group, Inc.,*
  224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (1990) ............ 19

*Goodman v. Resolution Trust Corp.,*
  7 F.3d 1123 (4th Cir. 1993) ................................. 8

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002) ........................................ 18

*Ike v. Doolittle,*
  61 Cal. App. 4th 51 (Cal. App. 4th Dist. 1998) ............. 20

*In re IT Group,*
  448 F.3d 668 (3rd Cir. 2006) ............................ 9, 19

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574, (1986) ....................................... 12

*Murphy v. T. Rowe Price Prime Reserve Fund,*
  8 F.3d 1420 (9th Cir. 1993) ................................ 18

*Rankin v. Satir,*
  75 Cal. App. 2d 691, 171 P.2d 78 (Cal. 1946) ........... 18, 19

*Schroeder v. New Century Holdings, Inc.,*
  387 B.R. 95 (Bankr. D. Del. 2008) ..................... passim

-ii-

## TABLE OF AUTHORITIES
(continued)

Page

*Skretvedt v. E.I. Dupont De Nemours*,
  372 F.3d 193 (3d Cir. 2004) ................................. 18

*Universal Mortg. Co. v. Prudential Ins. Co.*,
  799 F.2d 458 (9th Cir. 1986) ................................ 20

**Statutes**

26 U.S.C. §§ 671 *et seq* ...................................... 8

29 C.F.R. § 2510.3-102(a) .................................... 16

29 U.S.C. § 1051(2) ........................................... 5

29 U.S.C. § 1081(a)(3) ........................................ 5

29 U.S.C. § 1101(a)(1) ........................................ 5

Cal. Civ. Code § 2223 ........................................ 17

ERISA § 201(2) ................................................ 5

ERISA § 301(a)(3) ............................................. 5

ERISA § 401(a)(1) ............................................. 5

Fed. R. Bankr. P. 7056 ........................................ 1

Fed. R. Civ. P. 56 ............................................ 1

**Other Authorities**

IRS Private Letter Rulings 8113107 (Dec. 31, 1980) ............ 9

J. Cartano, *Taxation of Compensation & Benefits* § 20.01 [A]
  (2007) ..................................................... 14

-iii-

The Liquidating Trustee[1] respectfully submits this memorandum in support of his motion for summary judgment with respect to the status of the assets held in the rabbi trust pursuant to Fed. R. Civ. P. 56(c), as made applicable by Fed. R. Bankr. P. 7056.[2]

## INTRODUCTION

This case presents a central question: in the event of insolvency, who owns the assets of a rabbi trust established as a source of funds to help New Century satisfy its obligations to pay future benefits in accordance with the New Century Financial

---

[1]     The Liquidating Trustee now stands in the shoes of the New Century Defendants in this adversary proceeding.  They include: New Century Financial Corporation (f/k/a New Century REIT, Inc.), a Maryland corporation; New Century TRS Holdings, Inc. (f/k/a New Century Financial Corporation), a Delaware corporation; New Century Mortgage Corporation (f/k/a JBE Mortgage) (d/b/a NCMC Mortgage Corporation, New Century Corporation, New Century Mortgage Ventures, LLC), a California corporation; NC Capital Corporation, a California corporation; Home 123 Corporation (f/k/a The Anyloan Corporation, 1800Anyloan.com, Anyloan.com), a California corporation; New Century Credit Corporation (f/k/a Worth Funding Incorporated), a California corporation; NC Asset Holding, L.P. (f/k/a NC Residual II Corporation), a Delaware limited partnership; NC Residual III Corporation, a Delaware corporation; NC Residual IV Corporation, a Delaware corporation; New Century R.E.O. Corp., a California corporation; New Century R.E.O. II Corp., a California corporation; New Century R.E.O. III Corp., a California corporation; New Century Mortgage Ventures, LLC (d/b/a Summit Resort Lending, Total Mortgage Resource, Select Mortgage Group, Monticello Mortgage Services, AD ASTRA Mortgage, Midwest Home Mortgage, Trats Financial Services, Elite Financial Services, Buyers Advantage Mortgage), a Delaware limited liability company; NC DELTEX, LLC, a Delaware limited liability company; NCORAL L.P., a Delaware limited partnership; New Century Warehouse Corporation, a California corporation (the foregoing, "New Century"); and the Official Committee of Unsecured Creditors.  The Complaint erroneously names "New Century Holdings, Inc., a Delaware corporation," as the lead Debtor.  This is not a legal entity.

[2]     The Liquidating Trustee seeks summary judgment as to all claims that relate to the status of the assets in the rabbi trust.  Count VI, which is framed as an alternative claim in the event the Court determines the New Century Financial Corporation Deferred Compensation Plan is a "top hat" plan, is effectively irrelevant in light of plan confirmation.  Count V, styled as "Attorneys' Fees," is not a separate claim but instead seeks a particular remedy in the event liability is determined.

Corporation Deferred Compensation Plan ("DCP") and Supplemental Executive Retirement/Savings Plan ("SERP") (collectively, the "Plans")?  The New Century Financial Corporation Supplemental Benefit And Deferred Compensation Trust Agreement ("Trust Agreement") answers that question in unambiguous terms: the assets of the trust are "subject to the claims of creditors in the event the Company becomes insolvent."  (*See* Ex. A[3] (at Recitals)(NCDCP0002243).)  As such, Plan participants and their beneficiaries "have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust Fund." (Ex. A. (¶ 1.3)(NCDCP0002244).)

Although fact-intensive issues remain regarding the "top hat" status of the DCP,[4] judicial economy favors an expedited determination of the legal status of the assets held in the rabbi trust.  The disposition of this case ultimately will turn on whether the rabbi trust assets are property of the Liquidating Trust.  The Court can adjudicate that threshold question independently -- and prior to consideration of the top hat status of the Plans -- because the Trust Agreement "govern[s] the rights of the Participant and the creditors of the Employers to the assets transferred to the Trust." (Ex. B

---

[3]     All exhibits are attached to the accompanying Declaration of Arthur W.S. Duff.
[4]     As the Liquidating Trustee explained in his Motion for Partial Summary Judgment With Respect to the Supplemental Executive Retirement/Savings Plan, there are no disputed issues of material fact regarding the "top hat" status of the SERP.

-2-

(Art. 14.2).)  No separate analysis of the Plans' legal status
is required or warranted at this stage to determine whether the
Trust assets belong to the Liquidating Trust.

As described below, there are no disputed issues of fact
regarding the status of the Trust assets. The Trust Agreement
states that the Trust assets are assets of New Century that are
subject to the claims of the company's general creditors in the
event of insolvency.  This Court already has held that the Plans
are unfunded, notwithstanding the use of a rabbi trust to
provide a source of funds to assist New Century in meeting its
obligations under the Plans. *Schroeder v. New Century Holdings,
Inc. (In re New Century Holdings, Inc.)*, 387 B.R. 95, 111
(Bankr. D. Del. 2008).  If Plan participants cannot look to the
rabbi trust as a "*res* . . . to satisfy their claims," then,
logically, the Trust assets must be assets of the company.  *Id*.
Summary judgment on Counts I and IV is warranted on this basis
alone.

Summary judgment is also warranted on Counts II and III,
which, respectively, seek to establish a constructive trust over
Trust assets and to reform the terms of the Trust.  There are no
disputed issues of material fact regarding the source of the
Trust assets.  Although the Complaint alleges that the Trust
consists of employee "contributions" and employer
"withholdings," the facts are to the contrary.  *In re New*

-3-

*Century Holdings, Inc.*, 387 B.R. at 114.   The Trust was funded through periodic transfers by New Century from its general corporate assets.   Neither the wire transfers to the Trust, nor the Trust itself, identified the amounts of specific participant deferrals under the Plans.   Because the Trust assets were at all times property of New Century and cannot be traced to any specific participant deferrals, plaintiffs cannot carry their burden of showing that the Trust assets were "wrongly" appropriated by fraud or deceit.

Finally, there are no disputed facts regarding the validity or formation of the Trust.   There is nothing in the record (nor any allegation in the Complaint) to suggest that the terms of the Trust Agreement -- and, in particular, the terms of the Trust Agreement that identify the Trust assets as property of New Century -- are the result of fraud or mistake.   Moreover, this Court already has held that the Trust is a valid rabbi trust.   *In re New Century Holdings, Inc.*, 387 B.R. at 111.

Because the resolution of the status of the rabbi trust assets is *the dispositive issue* in this case, regardless of any other factual issues regarding the selectivity of the Plans, the Liquidating Trustee respectfully requests that the Court consider this motion on an expedited basis and grant summary judgment in his favor.

-4-

## NATURE AND STAGE OF PROCEEDINGS

The New Century Defendants filed a petition for relief under Chapter 11 of the Bankruptcy Code on April 2, 2007.  On June 20, 2007, plaintiffs[5] filed a class action complaint challenging the "top hat"[6] status of the Plans under ERISA (the Complaint or "Compl.", D.I. 1 at ¶¶ 1-2).  The gravamen of the Complaint is that the Plans were improperly administered because they were not limited to a select group of "highly compensated" employees. (*Id.* at ¶¶ 23-24.)  The putative class is defined to include:

> All former and current employees of the above named Debtors and Debtors in Possession who participated at any time in the New Century Financial Corporation Deferred Compensation Plan and/or Supplemental Executive Retirement/Savings Plan (jointly, the "Plan"), including as same was amended or reinstated, from January 1, 1999 through the present, and who had, as of the date of commencement of these chapter 11 cases, undistributed assets in the Plan and its accompanying trust (collectively the "Beneficiaries").

(D.I. 7 at 3.)

On April 23, 2008, the Court entered an order denying New Century's motion to dismiss.  *In re New Century Holdings, Inc.*, 387 B.R. at 95.  Based on its review of the applicable plan documents and Trust Agreement, the Court held that the Plans were "unfunded" for purposes of the "top hat" plan analysis.

---

[5]    Plaintiffs include Gregory J. Schroeder, Michelle Parker, Steve Holland, Martin Warren and Nabil Bawa.  (D.I. 1 at ¶ 3.)

[6]    ERISA defines a "top hat" plan as "a plan which is [1] unfunded and [2] is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  ERISA §§ 201(2), 301(a)(3) and 401(a)(1); 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1).

-5-

*Id.* at 111.  Among other things, the Court reasoned that Plan participants did not have a *res*, separate and apart from the company's general assets, to which they could look to satisfy claims under the plan.  *Id.*  The Court further held that the use of a rabbi trust did not alter the Plans' unfunded status.  *Id.*

New Century filed an Opposition to Plaintiffs' Motion for Class Certification on Aug. 21, 2008 (D.I. 82.)  On the same day, New Century filed a Motion to Dismiss the Claims of the Named Plaintiffs for Lack of Subject Matter Jurisdiction.  (D.I. 75.)  Plaintiffs filed a Reply in Support of Class Certification on Oct. 6, 2008 (D.I. 89), and an Opposition to New Century's Motion to Dismiss on the same day.  (D.I. 90.)  The Court has not yet ruled on either motion.

On March 23, 2009, the Court entered a consent order discharging Wells Fargo Bank, N.A., as trustee, from the adversary proceeding and releasing $6,704,474.59 in funds from the rabbi trust, the amount by which the funds in the rabbi trust exceeded the maximum potential liabilities under the Plans.  (D.I. 136.)

## SUMMARY OF ARGUMENT

1.    The Trust Assets are assets of New Century that are subject to the claims of the company's general creditors.

(a.) The Trust Agreement expressly states that the Trust assets are "assets of the company . . . subject to

-6-

the claims of the employer's creditors in the event of insolvency or bankruptcy."

(b.) This Court held that the Plans are unfunded notwithstanding the use of a rabbi trust. The logical extension of the Court's conclusion that Plan participants do not have a *res*, separate and apart from the general assets of the company, to satisfy their claims under the Plans, is that Plan participants do not have a right to the assets of the rabbi trust greater than the rights of the company's general creditors.

(c.) The undisputed facts show that the assets deposited in the Trust were the corporate general assets of New Century.

2.   Plaintiffs cannot establish a constructive trust over the Trust assets because the undisputed facts show that the Trust assets unambiguously were at all times the property of New Century and were not obtained from Plaintiffs by means of fraud or deceit. Moreover, the Trust assets cannot be traced to any specific Plan participant deferrals under the Plans. The wire transfers to Wells Fargo were not accompanied by any Plan participant information and the Trustee does not maintain information regarding the amount of any payments due to participants under the Plans.

3.   Plaintiffs are not entitled to reformation of the

-7-

Trust Agreement because the intent of the parties is unambiguous and there is no evidence in the record (and no allegation in the Complaint) of fraud or mistake in the formation of the rabbi trust.    Indeed, this Court already has determined that the Trust is a valid rabbi trust.

## STATEMENT OF UNDISPUTED FACTS

On January 1, 1999, New Century and Wells Fargo entered into the Trust Agreement.    The Trust is a "grantor trust" with the corpus and income of the Trust treated as assets and income of New Century.[7]   (Ex. A (recitals) NCDCP0002243; (§ 4.1)(NCDCP0002245) ("the Trust constitute[s] a grantor trust under [Internal Revenue] Code Sections 671 through 679, with the assets of the Trust Fund being treated as assets of the Company for purposes of Federal, state and local income tax laws").) Pursuant to the terms of the Trust Agreement, New Century is obligated to pay taxes on income and earnings generated by the assets held in the Trust.    (Ex. A (NCDCP0002250)).    An irrevocable grantor trust is commonly referred to as a "rabbi trust" where, as here, the trust holds company assets that have been set aside to pay future unsecured benefits under a deferred compensation arrangement.[8]   Simply put, the Trust, like all rabbi

---

[7]     A "grantor trust" is one in which the party creating the trust remains the owner of the trust assets.  *See Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993); *see also* 26 U.S.C. §§ 671 *et seq.*
[8]     The term "rabbi trust" is derived from a 1980 Internal Revenue Service letter ruling recognizing that income on deferred compensation held in trust

-8-

trusts, was intended to provide Plan participants with an additional measure of security in their future benefits in the event of a change of control in the company.  However, to maintain the significant tax advantages under the Plans, the assets of the Trust at all times remained subject to the claims of New Century's general creditors.

New Century had no obligation under the Trust Agreement to contribute *any* funds to the Trust prior to a "change of control"[9] of the company. (Ex. A (§ 1.3)(NCDCP0002244), (§ 7.5) (NCDCP0002249), (§§ 16.1-16.3)(NCDCP0002254-255)).  Rather, the Trust was intended to serve as a source of funds to assist New Century in meeting its obligations to pay future unsecured benefits in accordance with the Plans.  (Ex. A (NCDCP0002243).) New Century periodically transferred funds to Wells Fargo via wire transfer for deposit in the Trust. (Declaration of Janet Okimoto in Support of the Liquidating Trustee's Motion for

---

for the benefit of a rabbi would be taxable to the congregation, provided the trust assets were subject to the claims of the congregation's general creditors.  *See* IRS Priv. Ltr. Rul. 81-13-107 (Dec. 31, 1980); see *also Accardi v. IT Litig. Trust (In re IT Group, Inc.)*, 448 F.3d 661, 665 (3d Cir. 2006).

[9]     The Trust Agreement defines "change of control" to mean: (1) "approval by the stockholders of the Company of the dissolution or liquidation of the Company"; (2) except under certain circumstances, "consummation of a merger, consolidation, or other reorganization, with or into, or the sale of all or substantially all of the Company"; (3) any person becomes the beneficial owner of securities of the Company representing more than 50% of the combined voting power of the Company's then outstanding securities entitled to then vote generally in the election of directors of the Company; or (4) except under certain circumstances, "[d]uring any period not longer than two consecutive years, individuals who at the beginning of such periods constituted the Board of Directors of the Company . . . cease to constitute at least a majority thereof".  (Ex. A (NCDCP0002254-255).)

-9-

Summary Judgment ("Okimoto Decl.") ¶ 4.) These wire transfers were made from the general corporate assets of New Century and were not accompanied by any Plan participant-specific information. (*Id.* ¶¶ 5-6; *see also* Opening Brief in Support of Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss ("Wells Fargo Brief") at pp. 8 n.5, 29 n.10 (D.I. 24).) Wells Fargo maintained no information regarding the amount of any payment due to participants under the Plans.[10] (*Id.*)

The Trust Agreement defines the legal rights of Plan participants with respect to the Trust assets in the event of insolvency. Specifically, the Trust Agreement states that:

> Participants and their beneficiaries shall have **no preferred claim** on, or any beneficial ownership interest in, any assets of the Trust Fund. Any rights created under the Plans and this Trust Agreement shall be **mere unsecured contractual rights** of Participants and their beneficiaries against the Company [New Century] and its affiliates, as applicable. Any **assets held by the Trust Fund will be subject to the claims of the Company's general creditors** under federal and state law in the event of insolvency, as defined in Section 4.2 herein.

(Ex. A (NCDCP0002244) (emphasis added); *see also id.*

(NCDCP0002245) ("[t]he assets of the Trust Fund shall at all times be subject to the claims of the general creditors of the

---

[10]    This practice contrasted sharply with New Century's practice of transmitting employee contributions to J.P Morgan Retirement Plan Services LLC ("J.P. Morgan RPS") as recordkeeper and trustee of the New Century Financial Corporation 401(k) Profit Sharing Plan ("401(k) Plan"). (Okimoto Decl. ¶ 7.) These wire transfers to J.P. Morgan RPS in respect of the 401(k) Plan were accompanied by a separate file that itemized the specific employee contributions that were included in the wire amount. (*Id.* ¶ 8.)

Company.").)    The Trust Agreement further states that "the rights of the general creditors of [New Century] to enforce the provisions of [the Trust Agreement] in the event of [New Century's] Insolvency [are intended to] be enforceable with respect to the Trust Fund at the time of Insolvency under Federal and state law." (Ex. A (NCDCP0002245).)

Although New Century may use the Trust assets as a source of funds to assist it in satisfying its obligations under the Plans, there is nothing in the Trust Agreement that requires it to do so. New Century may pay benefits directly to Plan participants as they become due and, if there are sufficient assets in the Trust, seek reimbursement from the Trust. (Ex. A (§ 7.5)(NCDCP0002249).) Alternatively, New Century can direct Wells Fargo, the trustee, to make payments directly to Plan participants from the assets in the Trust. (*Id.*) If there are insufficient assets in the Trust to pay Plan benefits, New Century must provide the balance of each benefit payment as it becomes due. (Ex. A (§ 7.5)(NCDCP0002249).) And, in the event of insolvency, all assets in the Trust are subject to the claims of the company's general creditors. (*Id.* (§ 1.3)(NCDCP0002244).)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) is made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056. Pursuant to Rule 56(c), New Century is entitled to summary

-11-

judgment if the Court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable the finder of fact to reasonably find for the nonmovant on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## ARGUMENT

I. **THE LIQUIDATING TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND IV BECAUSE THE TRUST ASSETS ARE ASSETS OF NEW CENTURY SUBJECT TO THE CLAIMS OF THE COMPANY'S GENERAL CREDITORS.**

    A.   The Trust Agreement Makes Clear That The Assets Of The Trust Are At All Times Subject To The Claims Of New Century's General Creditors.

The fundamental purpose of a rabbi trust is to "set aside

-12-

deferred compensation in a segregated fund or trust" while preserving the Plans' unfunded status by leaving the funds "subject to the claims of the employer's creditors in the event of insolvency or bankruptcy." *In re IT Group, Inc.*, 448 F.3d 661, 665 (3d Cir. 2006). As this Court recently held, "a rabbi trust used in combination with an unfunded deferred compensation plan provides the employee with an additional measure of security without jeopardizing the plan's unfunded status." *In re New Century Holdings, Inc.*, 387 B.R. 95, 11 (Bankr. D. Del. 2008). Critically here, the rabbi trust preserves the risk that Plan participants will lose their deferred benefits in the event of bankruptcy. It is precisely that risk, which has now come to pass, that provided Plan participants with significant tax advantages on their deferred wages while New Century was solvent.

The Trust Agreement establishes, in unambiguous terms, that the Trust assets are "assets of the Company." (Ex. A (§ 4.1)(NCDCP0002245).) As assets of New Century, the Trust funds were at all times "subject to the claims of the Company's general creditors under federal and state law in the event of insolvency." (Ex. A (§ 1.3)(NCDCP0002244); (§ 4.2) (NCDCP0002245).) Perhaps more important, the Trust Agreement expressly limits the right of Plan participants to make claims against Trust assets in the event of insolvency. Specifically,

-13-

Plan participants have "no preferred claim on, or any beneficial ownership interest in, any assets of the Trust Fund," but hold "mere unsecured contractual rights" to make claims against those assets. (Ex. A (§ 1.3)(NCDCP0002244).) In the event of insolvency, Trust assets are "subject to the claims of the Company's general creditors." (*Id.*) In light of those clear terms, there can be no dispute about the status of the Trust assets or the rights of Plan participants to make claims against those assets in the event of insolvency.

B.    The Court's Determination That The Plans Are Unfunded Logically Supports The Conclusion That The Trust Assets Are Property of The Estate.

This Court has already determined that the Plans are unfunded, notwithstanding the use of a rabbi trust, as a source of funds to assist New Century in meeting its obligations under the DCP. In its decision and order denying New Century's motion to dismiss, the Court reasoned that a plan is unfunded when "[t]he employer promises to pay the employee the deferred compensation at a specified time, but does not set aside the funds in an escrow, trust fund, or other-wise." *In re New Century Holdings, Inc.*, 387 B.R. at 109 (citing J. Cartano, *Taxation of Compensation & Benefits* § 20.01 [A], at 745 (2007)). Based on its review of relevant documents, including the Trust Agreement, the Court concluded that the Plans were unfunded

-14-

because "participants in the Plan do not have a *res*, separate
from the general assets of the Debtors, to satisfy their
claims." *Id.* at 110.  Among other things, the Court noted that
"the Plan provides that the participants do not have a legal
right greater than that of general unsecured creditors to the
assets of the corporation or to some specific subset of
corporate assets." *Id.* at 111.  Critically here, the Court also
concluded that the use of a rabbi trust did not disturb the
Plans' unfunded status.  *Id.*  That conclusion is fatal to
plaintiffs' case.

If, as the Court concluded, Plan participants do not have a
*res*, separate and apart from the general assets of the company,
to satisfy their claims, and that conclusion is unaltered by the
use of a rabbi trust, then, logically, Plan participants do not
have a right to claim against the assets of the rabbi trust.  If
Plan participants did have a right to claim against the Trust
assets as a separate *res*, then the Court's conclusion that the
Plans were unfunded would be incorrect.[11]  Any suggestion that
Plan participants have a right to the Trust assets greater than
that of New Century's general creditors irreconcilably conflicts

---

[11]     Moreover, any determination regarding the "top hat" status of the Plans
will not disturb the Court's holding that the Plans are unfunded.  In order
to fit within the Third Circuit's definition of a "top hat" plan, a deferred
compensation plan must be [1] unfunded and exhibit the required purpose and
[2] cover a select group of management or highly compensated employees.  *In
re New Century Holdings, Inc.*, 387 B.R. at 110 (citations omitted).  The
conclusion that the Plans are unfunded simply has no bearing on whether the
Plans were sufficiently selective.

-15-

with the Court's holding, which is now law of the case. *Fagan v.
City of Vineland*, 22 F.3d 1283, 1290 (3d Cir. 1994).

    C.    <u>The Trust Assets Do Not Include Employee Contributions
        Or Withholdings.</u>

    Plaintiffs assert that the Trust consists of participant

"contributions" to the Plans that were "withheld" by New

Century.[12] (D.I. 1 at ¶ 44.)  Plaintiffs are wrong.  Participant

deferrals under the Plans were nothing more than bookkeeping

entries -- notional accounts that measured the corporate

liabilities of New Century -- that reflect New Century's

unsecured promise to pay Participants deferred wages at a later

date, subject to the risk of insolvency.[13]  (*See, e.g.,* Ex. C

(NCDCP0012195-2209) (explaining that participant accounts "will

merely be bookkeeping entries on the Company's books, and you

will obtain no interest in any particular investment or in any

deemed investment . . ."); Ex. D. (NCDCP00001880)(noting that

the Plan Administrator will maintain "bookkeeping accounts to

---

[12]    The Complaint seeks the imposition of a constructive trust over "Plan
Assets" held in the rabbi trust. (D.I. 1 at ¶¶ 40, 44.)  Department of Labor
regulations provide that "the assets of the plan include amounts . . . that a
participant or beneficiary pays to an employer, or amounts that a participant
has withheld from his wages by an employer, for contribution to the plan of the
earliest date on which such contributions can reasonably be segregated from the
employer's general assets." 29 C.F.R. § 2510.3-102(a).  The periodic wire
transfers by New Century to Wells Fargo, as trustee of the Trust, were made
from corporate assets and contained no participant-level information
whatsoever.  (Okimoto Decl. ¶¶ 5-6; *see also* D.I. 24 at 8 n.5, 29 n.10.)  The
Court's holding that the Plan is unfunded "[n]otwithstanding any segregation of
assets or transfer to a grantor trust," only underscores that conclusion.  *In
re New Century Holdings, Inc.,* 387 B.R. at 111.
[13]    As explained in greater detail below, Participants' notional accounts
(they held no assets) under the Plans were tracked by the Plans' third-party
administrator, not the Trustee. *Cf.* D.I. 24 at 8 n.5, 29 n.10.

track participant deferrals").)

As this Court has explained, a deferral of income, which "implies that the employee agreed to receive the income at a later date and never actually possessed it," is "very different" from a "withholding" or an "amount received by an employer from employees." *In re New Century Holdings, Inc.*, 387 B.R. at 114 (suggesting that income deferrals may be considered assets of the estate under 11 U.S.C. § 541(b)(7)(A)(i)(1)-(B)(i)(1)).  Contrary to plaintiffs' assertion, the Trust assets consist of company assets transferred by New Century to the Trust as a potential source of funds to help satisfy its obligations to pay future benefits in accordance with the Plans.  (Okimoto Decl. ¶¶ 4-5; *see also* Ex. A (NCDCP0002244-245).)  Accordingly, plaintiffs' attempt to exclude the Trust assets from the estate must fail.

## II.    THE LIQUIDATING TRUSTEE IS ENTITLED TO SUMMARY JUDGMENT ON COUNT II BECAUSE NEW CENTURY'S OWNERSHIP OF THE TRUST ASSETS BARS THE CREATION OF A CONSTRUCTIVE TRUST.

Plaintiffs seek to establish a constructive trust over the Trust assets.  (Count II)  A constructive trust may be imposed on property as a remedy for things "wrongfully detained," Cal. Civ. Code § 2223, or "gained . . . by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act."[14]  *Id.* § 2224.  The purpose of a constructive trust is "to

---

[14]    The Trust Agreement is governed by and construed in accordance with California law.  (Ex. A (§ 17.1)(NCDCP0002255).)

-17-

prevent a person from taking advantage of his own wrongdoing."
*Murphy v. T. Rowe Price Prime Reserve Fund*, 8 F.3d 1420, 1422-
1423 (9th Cir. 1993); *see also Rankin v. Satir*, 171 P.2d 78, 81
(Cal. 1946) (constructive trusts "take form whenever title is
obtained by means of chicanery, deceit, or other variety of
fraud, actual or constructive"). Plaintiffs bear the burden of
tracing the alleged trust property "specifically and directly"
back to the allegedly improper transfers giving rise to the
trust. *See, e.g., Bank of Alex Brown v. Goldberg (In re
Goldberg)*, 158 Bankr. 188, 196 (Bankr. E.D. Cal. 1993), *aff'd*,
168 Bankr. 382 (Bankr. 9th Cir. 1994). If plaintiffs fail to
trace the funds, the funds presumptively constitute "an interest
of the debtor in property." *Danning v. Bozek (In re Bullion
Reserve of North America)*, 836 F.2d 1214, 1217 (9th Cir. 1988).[15]

As discussed above, the Trust assets are and were property
of New Century. (Ex. A (NCDCP0002243-244).) And prior to the

---

[15]     If ERISA supplies the background rule for plaintiffs' claim for a
constructive trust, the governing principles are nearly identical. The
United States Supreme Court has held that a constructive trust cannot be
imposed unless the corpus of the trust is "identified as belonging in good
conscience" to the plaintiffs and can "clearly be traced" to property in New
Century's possession. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S.
204, 213 (2002); *Skretvedt v. E.I. Dupont de Nemours*, 372 F.3d 193, 199 (3d
Cir. 2004) (holding a constructive trust can be imposed only on "sufficiently
identified specific funds traceable to the defendant ERISA plans that belong
in good conscience to the [plaintiff]"). Moreover, while an ERISA plaintiff
may seek a constructive trust, "such a remedy is only appropriate where a
defendant has committed 'some form of ill-gotten gain of another's property'
such as 'fraud, duress, or unconscionable behavior.'" *BankAmerica Pension
Plan v. McMath*, No. C 97-3242, 2001 U.S. Dist. LEXIS 2805, at *37 (N.D. Cal.
Mar. 5, 2001) (citing *FMC Med. Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir.
1997)).

-18-

payment of benefits under the Plans, participants' rights to the Trust assets are no greater than those of New Century's general, unsecured creditors. (Ex. A (§ 1.3)(NCDCP0002244), (§ 4.2)(NCDCP0002245)); *see also In re IT Group*, 448 F.3d 668, 670 n.6 (3rd Cir. 2006) (holding that similar language was evidence that participants' rights to plan assets was no greater than those of general creditors). Because the assets transferred to the Trust were corporate assets, Plaintiffs cannot carry their burden of showing that New Century subsequently obtained title to the Trust assets "by means of chicanery, deceit, or other variety of fraud." *Rankin*, 171 P.2d at 81; *see also GHK Assocs. v. Mayer Group, Inc.*, 274 Cal. Rptr. 168, 182-83 (Cal. Ct. App. 1990).

The undisputed facts also show that the Trust assets cannot be traced to any individual Plan participant.[16] As discussed, the periodic wire transfers to the Trust contained no participant information. (Okimoto Decl. ¶ 6.) Likewise, Wells Fargo, as trustee of the Trust, maintains no information regarding the amount of any payment due to participants under the Plans. (*See* D.I. 24 at 8 n.5, 29 n.10.) Because the Trust

---

[16]    The Plans' third-party administrators maintained bookkeeping entries to track participant deferrals under the Plans. (*See, e.g.*, Ex. D (NCDCP0001867-1933)(2006 Enrollment Kit) (noting that the Plan Administrator will maintain "bookkeeping accounts to track participant deferrals").)  These bookkeeping entries were maintained by the plan administrator, not the Trustee, and did not necessarily correspond with the assets held in the Trust.  As the Trust Agreement explains, the "deemed investments" designated by Plan participants were "solely for the purpose of determining the amount to be paid to the Participant under the Plan and shall in no way alter the characterization of the assets of Trust Funds as assets of the Company." (Ex. A (NCDCP0002246).)

-19-

assets are not traceable to specific participant "contributions" or deferrals, Plaintiffs fail to meet their burden of tracing the Trust assets "specifically and directly" to an alleged improper transfer.

For these reasons, the Court should enter summary judgment in favor of the Liquidating Trustee on Count II.

### III. THE LIQUIDATING TRUSTEE IS ENTITLED TO JUDGMENT ON COUNT III BECAUSE PLAINTIFFS ARE NOT ENTITLED TO REFORMATION OF THE TRUST.

Count III of the Complaint seeks to revise the terms of the Trust by selectively ignoring provisions of the agreement that clearly identify New Century as the source and owner of the Trust assets. (D.I. 1 at ¶ 49.) Plaintiffs' attempt to restructure and reform a valid rabbi trust -- in a manner completely at odds with the clear intent of the parties to the trust -- is untenable.

Reformation of a trust is only appropriate "to effectuate a common intention of the parties that was incorrectly reduced to writing." *Universal Mortgage Co. v. Prudential Ins. Co.*, 799 F.2d 458, 460 (9th Cir. 1986) (applying California law); *see also Ike v. Doolittle*, 70 Cal. Rptr. 2d 887, 908 (Cal. Ct. App. 1998) (recognizing "the equitable common law power of a trial court to reform a trust agreement based on mistake, but not to create a new trust agreement under the theory of reformation.") "Evidence

-20-

warranting reformation must be clear, convincing and 'not loose,
equivocal, or contradictory, leaving the mistake open to doubt.'"
*Central Mfrs. Mut. Ins. Co. v. Jim Dandy Markets, Inc.*, 77 F.
Supp. 171, 174 (S.D. Cal. 1948)(citations omitted).

Plaintiffs can point to no evidence of fraud or mistake in
the formation of the rabbi trust.  The Trust Agreement clearly
expresses the intent of New Century and Wells Fargo to establish
a grantor trust in the form of a rabbi trust. (*See* Ex. A (§
4.1)(NCDCP0002245) ("It is intended that the Trust constitute a
grantor trust under [Internal Revenue] Code Sections 671 through
679, **with the assets of the Trust Fund being treated as assets
of the Company** . . ." (emphasis added); *see* Ex. A (NCDCP0002243)
("[T]he Trust established by this Trust Agreement is intended to
be a 'grantor trust' with the result that the corpus and income
of the Trust is treated as assets and income of the Company. .
.").)  It is beyond dispute that the Trust was validly formed
and there is no evidence in the record (nor any allegations in
the complaint) of fraud or mistake.    Indeed, this Court has
held that the Trust is a valid rabbi trust, *In re New Century
Holdings, Inc.*, 387 B.R. at 111, the essential feature of which
is that the trust assets remain property of the company.  As
such, the Liquidating Trustee is entitled to summary judgment in
his favor on Count III of the Complaint.

## RELIEF REQUESTED

-21-

For the foregoing reasons, the Liquidating Trustee respectfully requests that his motion for summary judgment with respect to the status of the assets held in the rabbi trust be granted.

Dated:      March 27, 2009
            Wilmington, Delaware

                        Respectfully submitted,


                        ___/s/ Elizabeth Sloan_____
                        Bonnie Glantz Fatell (No. 3809)
                        Elizabeth Sloan (No. 5045)
                        BLANK ROME LLP
                        1201 Market Street, Suite 800
                        Wilmington, Delaware 19801
                        (302) 425-6400
                        (302) 425-6464 (fax)

                              -and-

                        Paul A. Friedman
                        BLANK ROME LLP
                        The Chrysler Building
                        405 Lexington Avenue
                        New York, NY 10174-0208

                              -and-

                        Gary S. Tell, Esq.
                        Arthur W.S. Duff, Esq.
                        O'MELVENY & MYERS LLP
                        1625 Eye Street, N.W.
                        Washington, DC  20006
                        (202) 383-5300
                        (202) 383-5414 (fax)

                        *Attorneys for the New Century
                        Liquidating Trustee*